IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 8:07CR383 |
| ) | |
| v. ) | |
| ) | **SENTENCING MEMORANDUM** |
| STEVEN SUDYKA, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on March 7, 2008.

**I. FACTS**

Defendant Sudyka was charged in a one-count information with possession of child pornography, a violation of 18 U.S.C. § 2252(a)(4)(B). Filing No. 1, Information. By statute, the crime is punishable by imprisonment for up to ten years. 18 U.S.C. § 2252(b)(2). Pursuant to a plea agreement, Sudyka entered a plea of guilty to the charge. Filing No. 4, Plea Agreement ("Plea Agr."); Filing No. 6, Minutes of Plea Hearing. In his petition to enter a plea of guilty, Sudyka stated, "I possessed illegal underage pornography for my personal viewing, and did not intend to share these images with anyone." Filing No. 3, Petition at 14. In the plea agreement, the United States (hereinafter, "the government") and the defendant agreed that Section 2G2.2 of the United States Sentencing Guidelines ("the Guidelines") applied to Sudyka's conduct and that his Guidelines base offense level was 18. Filing No. 4, Plea Agr. at 2. The government stated that it believed that enhancements for materials involving a prepubescent minor, distribution for a thing of value, use of a computer, and possession of between 10 and 150 images would apply. *Id.*

Sudyka reserved the right to challenge the enhancements. *Id.* at 3. The government agreed to recommend a sentence at the low end of the guideline range and to inform the court that Sudyka had timely informed the government of his intention to enter a plea. The court accepted Sudyka's plea but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated the defendant's Guidelines sentence.

The facts outlined in the PSR are primarily gleaned from the prosecutor's version of events and from an interview with the case agent, Immigration and Customs Enforcement ("ICE") Agent Charles Bautch. In the PSR, the Probation Office reports that 25 images were downloaded by Agent Bautch as part of his investigation and more than 10 but less than 150 images were later found stored on Sudyka's computer in a subsequent seizure. The case agent reported to the Probation Office that a further investigation had revealed that Sudyka possessed over 3,000 images of child pornography, most on DVDs or CD-ROMS. The Probation Office acknowledged that "[a]lthough the defendant did not intend to distribute the images, he obtained the images through his LimeWire (a peer-to-peer file sharing system) account." PSR at 5, ¶ 17.

In the PSR, the Probation Office identified U.S.S.G. § 2G2.2 as the applicable guideline provision for a violation of 18 U.S.C. § 2252(a)(4) and determined that Sudyka's base offense level should be 18. The Probation Office found the following adjustments were applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor), a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) (for distribution for receipt or expectation of a thing of value, but not for

pecuniary gain), a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer), a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for possession of material that portrayed sadistic or masochistic conduct or other depictions of violence), and a five-level increase under U.S.S.G. § 2G2.2(b)(7)(D) (for possession of over 600 images). The application of these enhancements resulted in an adjusted offense level of 36.

The Probation Office then subtracted three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 33. It then determined that Sudyka's criminal history category was I, which would result in a guideline sentencing range of 135 to 168 on the Guidelines sentencing table. Because the statutory maximum sentence on Sudyka's conviction was 120 months, the Probation Office calculated Sudyka's Guidelines to be 120 months. *See* U.S.S.G. § 5G1.1(a).

The government filed a statement/objection to the PSR. Filing No. 12. It did not dispute the factual accuracy to the Probation Office's calculations, but stated that it would stand by the plea agreement it had offered to the defendant and further stated that if the court were to disregard the plea agreement, it would join the defendant in a motion to withdraw the defendant's plea. Sudyka objected to the PSR for the same reason, and also objected, at the sentencing hearing, to the application of a four-level increase for sadistic or masochistic images and to a five-level enhancement for the number of images. *See* Filing No. 13. In response to Sudyka's objections to the PSR, the government offered a proffer that if the case agent were called to testify, he would testify in accordance with the facts set out in the PSR. The defendant did not object to the proffer. Sudyka also moved for a variance or deviation from the Guidelines pursuant to 18 U.S.C. § 3553(a).

At the plea hearing, Sudyka argued that his appropriate Guidelines sentencing range should be calculated as 63 to 78 months pursuant to the plea agreement, but urged the court to deviate downward from the Guidelines range to a sentence of probation. The government stated that the PSR's calculation was the proper determination of the Guidelines range, but agreed that Sudyka should be sentenced to the agreed-upon Guidelines range of 63 to 78 months. It objected to any deviation or variance from that sentencing range. The government argued that Sudyka had already received the benefit of its prosecutorial decision to charge him with possession of child pornography under 18 U.S.C. § 2252(a)(4)(B), as opposed to receipt of child pornography under 18 U.S.C. § 2252(a)(2). The former carries a maximum sentence of five years, whereas the latter carries a mandatory minimum sentence of five years and a maximum sentence of twenty years. In response to an inquiry from the court with respect to the distinction between possession and receipt in the context of Internet pornography, the government acknowledged that one would ordinarily have to receive something in order to possess it, but argued that there would be a distinction between possession and receipt, for example, in a case where an illegal object is left at one's house by someone else.

## II. LAW

The Sentencing Guidelines are no longer mandatory. *United States v. Booker,* 543 U.S. 220, 260-61 (2005). In *Booker,* the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. *Booker,* 543 U.S. at 226-27. In the *Booker* remedial opinion, the Supreme Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. *Id.* at 245. The range of choice in sentencing dictated by

the facts of the case has been significantly broadened. *Gall v. United States,* No. 06-7949, 552 U.S. —, —, 128 S. Ct. 586, 602 (2007) (finding a sentence outside the Guidelines to be reasonable); *Kimbrough v. United States,* No. 06-6330, 552 U.S. —, —, 128 S. Ct. 558, 570 (2007) (noting that courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); *Rita v. United States,* 551 U.S. —, —, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); *Cunningham v. California,* 549 U.S. —, —, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range indicated in the Guidelines but are obliged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C. § 3553(a)). These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 577 (Scalia, J., concurring) (noting that "any thumb on the scales," indicating that the "the Guidelines must be followed even where the district court's application of the § 3553(a) factors is entirely reasonable" would violate the Sixth Amendment because "the 'advisory' Guidelines would, over a large expanse of their application, *entitle* the defendant to a lesser sentence but for the presence of certain additional facts found by judge rather than jury") (emphasis in original).

    Under the Sentencing Reform Act, as modified by *Booker,* judges are required "to take account of the Guidelines together with other sentencing goals" when fashioning a defendant's sentence. *Booker,* 543 U.S. at 261. As the Supreme Court recently clarified in *Gall*, "the Guidelines should be the starting point and the initial benchmark" in

determining a sentence. *Gall,* 552 U.S. at —, 128 S. Ct. at 596 ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."); *United States v. Hernandez,* — F.3d —, —, 2008 WL 623616, *2 (8th Cir. Mar. 10, 2008) (noting that "[a] district court's first step in sentencing proceedings is to correctly calculate the defendant's Guidelines range"). District courts must therefore "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough*, 552 U.S. at —, 128 S. Ct. at 570 (*quoting Booker,* 543 U.S. at 245-246).

Accordingly, "the Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors" to determine the appropriate sentence. *Gall,* — U.S. at —, 128 S. Ct. at 596. The Sentencing Reform Act "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 570. Also, the statute "further provides that, in determining the appropriate sentence, the court should consider a number of factors, including 'the nature and circumstances of the offense,' 'the history and characteristics of the defendant,' 'the sentencing range established' by the Guidelines, 'any pertinent policy statement' issued by the Sentencing Commission pursuant to its statutory authority, and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.*

The district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Gall,* 552 U.S. at —, 128 S. Ct. at 597. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.,* 552 U.S. at —, 128 S. Ct. at 596. If the court decides that an outside-Guidelines sentence is warranted, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.* The Supreme Court rejects, however, the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595.

Congress established the Sentencing Commission ("the Commission") "to formulate and constantly refine national sentencing standards," in fulfillment of its important institutional role. *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 57; *Rita v. United States,* 551 U.S. at —, 127 S. Ct. at 2464. In that institutional role, the Sentencing Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 (noting that "even though the Guidelines are advisory rather than mandatory, they are . . . the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").

The Guidelines were developed to advance sentencing reform goals of reducing sentencing disparity, assuring certainty and severity of punishment, and increasing the rationality and transparence of punishment. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing at 11-12 (Nov. 2004) (hereinafter, "Fifteen-Year Assessment"). The Sentencing Commission was originally charged by Congress with developing guidelines to meet the "purposes of punishment" set out in § 3553(a)(2), and to achieve proportionality, crime control through incapacitation and deterrence, and rehabilitation. *Id.* at 12-13. Toward that end, the Commission developed and used data on past practices and recidivism in formulating the Guidelines. *See id.* at 14 (noting that the Guidelines are based in part on statistical analyses of pre-Guidelines sentencing practices); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567 (regarding drug trafficking Guidelines). Based on sentencing statistics, the Commission established the offense levels for each crime, linked to a recommended imprisonment range. Fifteen-Year Assessment at 14. Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range.

However, for policy reasons and because statutory mandatory minima dictated many terms of the Guidelines, the Commission departed from past practices in setting offense levels for such crimes as fraud, drug trafficking, and child crimes and sexual offenses. *Id.* at 15, 72-73; *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 567. Consequently, the Guideline ranges of imprisonment for those crimes are a less reliable appraisal of a fair sentence. *See Kimbrough,* 128 S. Ct. at 574.

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical

8

approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *See, e.g., Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Rita*, 551 U.S. at —, 127 S. Ct. at 2465); *see also Gall,* 552 U.S. at —, 128 S. Ct. at 594 n.2 (noting that not all Guidelines are tied to empirical evidence, most notably, those for drug offenses). In cases involving application of Guidelines that "do not exemplify the Commission's exercise of its characteristic institutional role," it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 575. A sentencing judge has greater familiarity with an individual case and individual defendant than the Commission or the appeals court and is "therefore 'in a superior position to find facts and judge their import under § 3353(a)' in each particular case." *Kimbrough,* 552 U.S. at —, 128 S. Ct. at 574 (*quoting Gall,* 552 U.S. at —, 128 S. Ct. at 597.

The Guidelines for child exploitation offenses, like the drug-trafficking Guidelines, were not developed under the empirical approach, but were promulgated, for the most part, in response to statutory directives. *See* U.S.S.G. App. C, Amends. 537 & 538 (Nov. 1, 1996), 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 651 (Oct. 27, 2003), & 664 (Nov. 1, 2004). The Commission itself acknowledges that "[t]he frequent mandatory minimum legislation and specific directives to the Commission to amend the Guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." Fifteen-Year Assessment at 73; United

9

States Sentencing Commission, Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 26 (Aug.1991) (noting that "mandatory minimums are both structurally and functionally at odds with sentencing guidelines and the goals the guidelines seek to achieve").

Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children. *See, e.g.,* The Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253 (targeting the commercial production of visual or print depictions involving minors engaged in sexually explicit conduct); The Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253 (raising the age of a child for purposes of defining child pornography from sixteen to eighteen); The Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a) (criminalizing the use of computers to transport, distribute, or receive visual depictions involving minors); 18 U.S.C. § 2252 (prohibiting the knowing interstate transportation and receipt of visual depictions of sexually explicit conduct involving a minor); The Child Pornography Prevention Act of 1996, 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional in Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002); The Protection of Children from Sexual Predators Act of 1998, 18 U.S.C. § 2426 (increasing punishment for persons who misrepresent themselves as minors or use computers or Internet access devices to locate and gain access to minors and for repeat offenders) 18 U.S.C. § 2252A (2000) (punishing, among other activities, anyone who "knowingly possesses any . . . material that contains an image of child pornography that has been mailed . . . in interstate or foreign commerce by any means, including by computer"); The Prosecutorial Remedies

and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act") of 2003, *codified at* 18 U.S.C. § 2252B (making it a criminal offense to "use[] a misleading domain name on the Internet with the intent to deceive a person into viewing obscenity or material constituting obscenity").

In 2004, the Sentencing Commission responded to Congressional directives by collapsing the guideline dealing with possession (formerly U.S.S.G. § 2G2.4) into the guideline dealing with trafficking of pornography (U.S.S.G. § 2G2.2).[1]  See U.S.S.G. App. C, Supp. amend. 664.  The Commission also afforded expansive coverage to the meaning of "distribution" in U.S.S.G. § 2G2.2(b)(3)(A) through (F) and applied significant quantity-driven enhancements for the number of images possessed, received or distributed in U.S.S.G. § 2G2.2(b)(7)(a)-(d).  *See id.*, Vol. II, amend. 592; Supp., amend. 664.

The clear focus of recent legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils.  *See* Congressional Findings, Pub. L. 104-208, Div. A, Title I § 101(a), 110 Stat. 3009-26 (Sept. 30, 1996); *see also* notes following 18 U.S.C.A. § 2251).  In particular, Guidelines amendments reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity."  U.S.S.G. App. C., amendment 492 (Vol. II) at 50.  The primary victims of the crime of possession of pornography are the exploited children*.  See United States v. Rugh,* 968 F.2d 750, 756 (8th Cir. 1992).

---

[1]The former section 2G2.4 provided a base offense level of 15, which would generate a sentencing range of 18 to 24 months at Criminal History Category I.

11

The text and structure of the criminal statute under which the defendant was charged, 18 U.S.C. § 2252, prohibits four categories of conduct with respect to child pornography: (1) transporting or shipping child pornography in interstate or foreign commerce by any means, including by computer; (2) receiving or distributing child pornography that has been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer; (3) selling, or possessing with intent to sell, child pornography that has been mailed or shipped in interstate or foreign commerce by any means, including by computer; and (4) knowingly possessing child pornography that has moved in interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252(a)(1)-(4). The first three categories of conduct are punishable, for a first time offender, by a minimum sentence of five years and a maximum sentence of 15 years. 18 U.S.C. § 2252(b)(1). The fourth category, simple possession, carries a maximum sentence of ten years, with no mandatory minimum. 18 U.S.C. § 2252(b)(2). The crimes of possession and possession with intent to sell were added to the statute as part of the Crime Control Act of 1990. *See* Pub. L. 101-647, § 323(b), 104 Stat. 4789, 4818-19. The addition of the section or the statute criminalizing mere possession "indicates an expansion of Congress's enforcement authority under the statute, because now, in addition to transportation, sale, and distribution, the mere possession of child pornography was also criminalized." *United States v. Vig,* 167 F.3d 443, 449 (8th Cir. 1999).

### III.   ANALYSIS

#### A.   Guideline Calculation

The court first calculates Sudyka's sentence under the advisory Guidelines. In accordance with the plea agreement, the court finds Sudyka's base offense level under the

Guidelines is 18.  See U.S.S.G. § 2G2.2(a)(1).  In light of the government's proffer, the court finds the calculations contained in the PSR properly establish Sudyka's sentence under the Guidelines.  Accordingly, the court finds Sudyka's adjusted offense level is 36, assessing a two-level increase for possession of material containing a prepubescent minor, a five-level increase for distribution for receipt or expectation of a thing of value, but not for pecuniary gain, a two-level increase for use of a computer, a four-level increase for possession of material that portrayed sadistic or masochistic conduct or other depictions of violence, and a five-level increase for the number of images.  The court finds an adjustment for acceptance of responsibility is warranted and the government has moved for a three-level adjustment.  The court thus finds Sudyka's total offense level under the guidelines is 33.  At criminal history category I, the defendant's advisory Guidelines term of imprisonment is 120 months, the statutory maximum for his conviction under 18 U.S.C. §§ 2252(a)(4) and 2252(b)(2).[2]

### B.  Plea Agreement

Both parties urge the court to accept the plea agreement.  The court intends to follow the plea agreement and accordingly finds that defendant will not be permitted to withdraw his plea.  The sentencing range established by the plea agreement is 63 to 78 months.  The defendant moves for a variance or deviation from that range to a sentence of probation.  The government seeks a sentence of 63 months.

---

[2]The court's determination of the Guideline sentence in a child pornography case does not generally include consideration of departure issues.  The court's authority to downwardly depart is controlled by the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (the "PROTECT Act").  That Act amended 18 U.S.C. § 3553(b) to restrict the authority of the district courts to depart from the Guidelines in sexual offense and child pornography cases.  18 U.S.C. § 3553(b)(2).  The PROTECT Act eliminated judicial departures for all reasons except those specifically authorized in Chapter Five, Part K, of the Guidelines Manual.  *Id.*  Also, post-PROTECT Act, downward guidelines departures for aberrant behavior under U.S.S.G. § 5K2.20, and for diminished capacity under § 5K2.13 are specifically disallowed for child crimes or sexual offenses.

### C.     Section 3553 Factors

#### 1.     Nature of the Offense

In considering the nature and circumstances of the offense, the court first finds possession of child pornography is a serious offense. It is one of a class of crimes that involve commercial sex acts, sexual exploitation of minors, and obscenity covered by part G of the Guidelines. Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or pornography production, as well as trafficking in pornography. Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children. Possession of pornography is the least serious of the crimes on the continuum of conduct–from possession to distribution to production to predatory abuse–that exploit children. A possessor of child pornography is considerably less culpable than one who produces or distributes the exploitative materials and is a marginal player in the overall child exploitation scheme.

The court further notes, with respect to the circumstances of Sudyka's crime, that, although Sudyka admittedly possessed the illegal materials, there is scant evidence of knowing distribution to others, and no evidence of any intent to do so. There has been no challenge to Sudyka's contentions that he lacks computer sophistication, did not intend to distribute the materials, and possessed them only for his own use. The PSR reports that 25 images were downloaded by an ICE agent as part of his investigation and only 10 to 150 images were stored on Sudyka's computer. The other images that Sudyka possessed

14

were stored on DVDs and CD-ROMs.[3] The court also notes that Sudyka's crimes were committed when he was addicted to and impaired by alcohol, for which he has since sought treatment. Sudyka has remained sober since June 2007. The government's assessment of the seriousness of Sudyka's crime is reflected in its plea agreement.

### 2.     Defendant's History and Characteristics

The court has also considered the defendant's history and characteristics. Sudyka has only one criminal history point. His only previous contacts with the criminal justice system are misdemeanor violations that involve abuse of alcohol and other substances. He has completed an 18-month intensive outpatient alcohol abuse program. He presently participates in individual and group sex offender counseling. He has complied with stringent conditions of pretrial release, including restrictions on travel, contact with minors, and use of the Internet. He has a stable employment history. Also, Sudyka is responsible for the care of his elderly mother. A lengthy period of incarceration would work an inordinate hardship on Sudyka's mother, who would likely lose her ability to live independently.

Importantly, Sudyka is not a pedophile, sexual predator or child abuser. There is no dispute that he did not intend to share or distribute child pornography. He has been examined by a mental health professional, who finds that he is at low risk to reoffend. The court has examined mental health assessments, as well as numerous letters of support for

---

[3]At least one court has held that an Internet transmission, standing alone, does not satisfy interstate commerce requirement of the statute. *United States v. Schaefer,* 501 F.3d 1197, 1200-01 (10th Cir. 2007) (stating it is not enough to assume that an Internet communication traveled across state lines). To support a conviction for possession of child pornography stored on CD or DVD the government must establish a link between the Internet and the images—it must show that the images came from an out-of-state computer via the Internet. *Id.*

15

the defendant. *See* Hearing Exs. 1, 2, & 3. Sudyka has demonstrated remorse, which the court credits as sincere and the court finds it is extremely unlikely that he will reoffend.

Further, the court notes that the defendant has already suffered serious consequences as a result of his actions. A conviction for possession of child pornography carries considerable stigma. Sudyka has lost his job, has a felony conviction on his record, and will have to register as a sex offender.

### 3. The Guidelines Range

In addition, the court has consulted and taken into account, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines and policy statements. The court has used the Guidelines calculation as its initial starting point. However, in view of the fact that the child pornography Guidelines are statutorily-driven, as opposed to empirically grounded, the court finds that the Guidelines ranges of imprisonment are a less reliable appraisal of a fair sentence. Because the child pornography Guidelines do not reflect the Sentencing Commission's unique institutional strengths, the court affords them less deference than it would to empirically-grounded guidelines.

The court has also considered the interplay between the statute and the Guidelines in light of the government's argument that its decision to charge possession as opposed to receipt of child pornography has already afforded Sudyka the effective benefit of a shorter sentence. The government candidly admits that in the context of child pornography via the Internet it is generally necessary to receive pornography in order to possess it. The statutes criminalizing the possession of child pornography, as amended over time and as interpreted by the Sentencing Commission in formulating Guidelines, are clearly aimed at Internet dissemination of child pornography. In that context, and without reference to rare,

unusual, or far-fetched factual situations, there does not seem to be a principled distinction between receiving and possessing child pornography. *Cf. United States v. Watzman,* 486 F.3d 1004, 1009 (7th Cir. 2007) (noting that a person who receives child pornography by accident—for example, if he sought adult pornography but was sent child pornography instead—is not guilty of knowingly receiving it, though he is guilty of possessing it if he retains it). Because the facts of this case do not involve any such unusual situation, the court is not able to find a nonarbitrary rationale for the government's charging decision. In the context of Internet child pornography crimes, a distinction between receipt and possession makes no sense in most cases.

In any event, the government cannot be heard to "stand by" its agreement while simultaneously urging the court to negate the government's supposed charging beneficence by lengthening the defendant's sentence by reason of a foregone charging option. In many cases the government could assert that it "could have" charged a different offense. Quite simply, the court, and not the prosecutor, is obliged to consider the factors set out in 28 U.S.C. § 3553. Section 3553 does not instruct the court to consider prosecutorial charging decisions in its analysis.

Another factor that weighs in the court's calculus is the proportional increase in the defendant's Guidelines sentence that resulted from application of the sentencing enhancements. In Sudyka's case, enhancements double the Guidelines offense level (from 18 to 36) and increase the sentencing range from 27-33 months to 188-235 months—a seven-fold increase. An increase of this magnitude approximates the "tail wagging the dog" situation recognized by the Eighth Circuit in *United States v. Bradford,* 499 F.3d 910, 920 (8th Cir. 2007) (intimating that a seven-fold increase in the permissible sentencing range could be "an 'extreme' case where due process requires clear and

convincing evidentiary support."); *United States v. Tyndall*, No. 07-2131, slip. op. at 8 (8th Cir. April 14, 2008) (noting that a seven-fold increase in the permissible Guidelines range might require the application of the clear and convincing standard of proof).

### 4. Sentencing Disparity

The court has also considered the need to avoid sentencing disparities. The ten-year statutory maximum on child pornography possession crimes frames this inquiry. Because the sentencing range is zero to ten years, a defendant would have to be at least in the middle range of similar defendants to justify a sentence of more than five years. The circumstances of the defendant's crime do not put him in that category. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. Sudyka's crime does not involve either scenario. The court thus concludes that Sudyka's crime falls at the low end of the culpability spectrum. Nevertheless, the court finds that a sentence of probation is not appropriate. A sentence of two years of incarceration is in line with the sentences imposed on similar defendants convicted of possession of child pornography.

This sentence more closely approximates the sentencing range that was in effect before the Sentencing Commission merged the child pornography possession guideline into the trafficking guideline, thus maintaining the important qualitative distinctions between "mere possession" and "distribution" of child pornography. The far greater culpability of an actual predator or abuser should be reflected in a sentence that greatly exceeds the punishment for the exploitative crimes that do not involve acts of abuse by a defendant.

## IV.     CONCLUSION

Accordingly, the court finds a sentence of 24 months will satisfy the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  The court finds that a sentence of incarceration shorter than the sentence recommended under the Guidelines reflects the seriousness of the offense and provides just punishment.  The mere fact of Sudyka's prosecution deters others from engaging in this sort of conduct, and a sentence of incarceration will act as a further deterrent to others contemplating such activity.  The value of any longer sentence as a deterrent, over and above these other factors, would be marginal.  Given that the benefit to society of a longer sentence of imprisonment would be negligible, the benefit of a longer term of incarceration is outweighed by the harm it would do to Sudyka and to his prospects of returning to society as a productive citizen on completion of his term of imprisonment.  Moreover, a sentence of twenty-four months will enable Sudyka to participate in the Bureau of Prison's drug and alcohol addiction program and will serve to ensure his future sobriety.

A Judgment and Commitment and Statement of Reasons in accordance with this Sentencing Memorandum will issue this date.

DATED this 14th day of April, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge